EDNA K. SOMMERS, Plaintiff-Appellant, *v.* AMERICAN ECONOMY INSURANCE COMPANY, Defendant-Appellee.

(No. 71-251; )

Second District—November 22, 1972.

Patrick J. Muldowney and Jerome H. Torshen, Ltd., both of Chicago, for appellant.

Caldwell, Berner & Caldwell, of Woodstock, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The plaintiff, Edna K. Sommers, appeals from a directed verdict entered in favor of the defendant, American Economy Insurance Company.

Plaintiff filed suit against defendant alleging that her husband, Frank C. Sommers, Sr., was insured by the defendant; that the policy provided indemnification for death resulting directly from an automobile accident; that on February 24, 1967, Mr. Sommers was involved in an automobile accident which resulted in his death; that according to the provisions of the policy, indemnity for the death was payable to the plaintiff; that after proper notice and demand the defendant refused to pay.

The case-in-chief consisted of evidence that Mr. Sommers suffered a heart attack in July, 1966; that on February 24, 1967, he was driving his auto upon the driveway of his place of employment; that the driveway was covered with ice and snow; that the car moved sideways and struck a snowbank; that the damage was "very, very minute"; that when first observed, Mr. Sommers appeared to be short of breath, was grabbing at his chest, then fell against the steering wheel, and that he died shortly thereafter.

Dr. John Paul, the physician who treated the deceased for his heart condition, testified after being asked to assume certain hypothetical facts, and the following dialogue occurred:

"Q. Doctor, do you have an opinion, within a reasonable degree of medical certainty, as to the cause of death of such a person?

A. Of course, I did not see this man die.

Q. Yes, Doctor. But medical certainty—within a reasonable degree of medical certainty do you have an opinion as to what this man died from?

The Court: The question is do you or do you not know; is that right?

(Plaintiff's attorney): Yes, your Honor.

The Witness: Well, it would certainly be a guess.

(By plaintiff's attorney): Do you have an opinion?

A. Yes.

Q. What is your opinion, Doctor?

A. He possibly died of a heart attack.

Q. Now, Doctor, assuming the same individual striking this snow bank in the automobile, do you have an opinion, within a reasonable degree of medical certainty, whether there could or might be a causal connection between the accident and the heart attack?

A. Being the same thing, there was no autopsy performed, however, this is possible.

Q. Do you have an opinion that it could or might, Doctor?

A. It possibly could be."

(On cross-examination of the doctor by defense counsel:)

Q. Doctor, when you said that he possibly died of a heart attack, you said it certainly would be a guess?

A. Yes.

Q. Because you were not there and you did not pronounce him dead?

A. That is correct.

Q. Again when you say it is possible that there is a connection

between the snow bank incident and the heart attack, that is again a guess?

A. Yes.

Q. You don't really know what happened; is that right?

A. I guess I would have (to) say that as I wasn't there."

After cross-examination of the witness, the court held the testimony to have been based upon guess and speculation and ordered the hypothetical question and all subsequent testimony of Dr. Paul stricken.

At the close of plaintiff's case, defendant was granted a directed verdict on the basis that there was no proof that Mr. Sommers' death resulted directly from an automobile accident.

■■■ The question of whether Dr. Paul's testimony was properly stricken is governed by the established rule that, in giving an opinion, an expert witness is not permitted to guess nor is he allowed to base the opinion upon conjecture. (*Lyons v. Chicago City Ry. Co.*, 258 Ill. 75, 80-82 (1913); *Schwartz v. Peoples Gas Light & Coke Co.*, 35 Ill.App.2d 25, 31, 32 (1962).) The Doctor's statements, quoted above, and a review of his testimony as a whole, leave no doubt that his opinion was based upon guess and conjecture and that it was properly stricken from the record.[1]

■■ We next consider whether the *Pedrick* test for a directed verdict was satisfied. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510 (1967).) The evidence, in its aspect most favorable to the plaintiff, reveals that her husband was insured under an automobile accidental death policy issued by defendant; that the decedent suffered a heart attack in July, 1966; that strain and worry can precipitate a heart attack; that on February 24, 1967, the auto which he was driving slid into a snowbank; that he was gasping for breath, grabbing at his chest, slumped over the wheel and died shortly thereafter.

Absent expert testimony, the record lacks any evidence to show that Mr. Sommers died of a heart attack. A jury could only speculate and guess whether the gasping for breath and chest clutching, coupled with a history of a heart condition, might indicate that Mr. Sommers suffered a heart attack. Then (were we to assume sufficient foundation in the record for such a finding), the jury would additionally have to guess whether the heart attack caused the accident or the accident caused the heart attack.

Plaintiff argues that, even absent Dr. Paul's testimony, there was sufficient evidence for the case to be submitted to the jury and cites *Chicago*

---

[1] Plaintiff relies upon *Clifford-Jacobs Co. v. Industrial Com.*, 19 Ill.2d 236, 242-243 (1960) for the proposition that the form in which an expert's opinion is stated is immaterial. This is unquestionably the law, but that decision does not alter the rule that guess and speculation are not permitted.

*Union Traction Co. v. May,* 221 Ill. 530 (1906) and *Rehthaler v. Crane Co.,* 218 Ill.App. 267 (1920). These cases stand for the proposition that:

> "* * * where it appears from the evidence that the plaintiff, in a personal injury case, was in good health before he was injured but in bad health afterwards, this may be sufficient to submit the case to the jury as to whether the disabilities complained of resulted from the injuries received [Citations omitted] * * *."

*Ivanhoe v. Buda Co.,* 247 Ill.App. 336, 344 (1928).

In the two cases cited by plaintiff, it was undisputed that the injured parties were in good health prior to their accidents. In the case at bar, the very issue to be determined was the condition of the decedent's health just prior to and at the time of the accident. The cited cases are further distinguishable. In *Chicago Union Traction,* the court indicated that even if plaintiff's condition pre-existed the accident, there was evidence in the record that the accident aggravated such condition; that even without evidence to show that the condition originated with the accident, the verdict could be upheld on this alternative basis. In the *Rehthaler* case, there was testimony that plaintiff's cancer could have been caused by the trauma incurred in the accident. The record in the instant case is devoid of evidence for an alternative conclusion.

Based upon the evidence viewed in its aspect most favorable to the plaintiff, we find that a verdict for the plaintiff could not stand. The trial court correctly directed a verdict for the defendant and its decision is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.