(No. 47638.-

BELOIT FOUNDRY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Lorean Pinson, Appellant.)

*Opinion filed Jan. 26, 1976.—Rehearing denied March 25, 1976.*

Martenson & Donohue, of Rockford (James L. Donohue, of counsel), for appellant.

Williams, McCarthy, Kinley, Rudy & Picha, of Rockford (Richard R. Haldeman, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

In June of 1973, the petitioner, Lorean Pinson, filed an application for adjustment of claim with the Industrial Commission to recover for the death of her husband, Thomas E. Pinson, who had been employed by the respondent, Beloit Foundry. The arbitrator's decision denying her claim was reversed by the Industrial Commission, but the circuit court of Winnebago County set aside

the Commission's award. The petitioner appealed directly to this court under our Rule 302(a)(2). Ill. Rev. Stat. 1973, ch. 110A, par. 302(a)(2).

The decedent, Thomas Pinson, left a wife and four dependent children at the time of his death. He and his wife had been legally separated for a number of years. Pinson was hired by Beloit Foundry as a castings grinder about December 5, 1972. Dr. T. A. Manning conducted a preemployment physical examination and reported that Pinson was employable, although he had abnormally high blood pressure for a man 36 years of age. Dr. Manning prescribed a drug, Renese R, to reduce Pinson's blood pressure and he ordered a kidney X ray, which was found to be normal.

Pinson arrived at the foundry at 5 a.m. on January 6, 1973, and presumably began his work of grinding small castings weighing 24 pounds each. The castings were in a box 3 or 4 feet away from the stationary grinder he operated. Pinson would carry a casting to the grinder, place it on the table of the machine, and press the casting by hand against the grinding wheel to remove lugs from the casting. It would take from 3 to 5 minutes to grind a lug from the casting. When this was done Pinson would drop the finished casting into a bin next to the grinder. At the hearing before the arbitrator, Pinson's foreman, Ralph King, testified that at 7 a.m. on the morning of January 6 he was told that something was wrong with Pinson. He went to Pinson's work station and found him apparently dead, lying next to the grinder. King testified that he was unable to recall if the grinder was running at the time, and he said that although he had looked at the finished-castings bin he was unable to estimate how many finished pieces there were in the bin because he did not look in it. An ambulance was called, and Pinson was taken to Beloit Memorial Hospital where he was pronounced dead. No autopsy was performed.

Pinson's sister testified before the arbitrator that she

lived across the street from Pinson and that he would come to her house for dinner each evening. Sometime in December of 1972 after he had begun work at the Beloit Foundry he "took sick" and would complain of headaches. He would hold his head and "the color around his eyes became very dark." On review before the Commission she testified that on January 3, 1973, because of her brother's complaints of illness she made an appointment for him with Dr. Manning for January 12.

Dr. Terrence Fisher, who testified before the Commission as a witness for the petitioner, stated his opinion was that the most likely cause of death under the circumstances of Pinson's death was an acute myocardial infarction or heart attack, and that one of the medical conditions which would predispose an individual to an attack was high blood pressure. He further testified that there was a causal relationship between the work Pinson was performing and a myocardial infarction, since his work required isometric exertion which would aggravate his high blood pressure.

The Industrial Commission, reversing the arbitrator's decision, found that Pinson had died from accidental injuries which arose out of and in the course of his employment. As has been stated the circuit court set aside the Commission's finding as contrary to the manifest weight of the evidence.

It is axiomatic that a court on review will not disturb a finding of the Industrial Commission unless its finding is contrary to the manifest weight of the evidence. (*Warren v. Industrial Com.*, 61 Ill.2d 373, 376.) The employer contends that the Commission's award was contrary to the manifest weight of the evidence in that: (1) there was insufficient competent evidence from which to find the actual cause of Pinson's death; and (2) since there was no direct evidence that Pinson worked that morning the Commission's conclusion of a causal relationship between work activity and death was based on mere speculation.

We consider there was sufficient evidence to support the conclusion that a cause of Pinson's death was a heart attack. "The claimant [is] not required to negate every other possible cause of death to establish death by reason of a heart attack as a legitimate inference from the evidence." (*Field Enterprises v. Industrial Com.*, 37 Ill.2d 335, 339.) Here the evidence showed that the decedent had a history of abnormally high blood pressure and had been assigned to work which required substantial physical exertion. Dr. Fisher testified in response to a hypothetical question that the most likely cause of death was a myocardial infarction and that high blood pressure was one of the conditions which would predispose one to a heart attack. The Commission could legitimately infer that Pinson's death was a result of a heart attack.

The employer complains that the hypothetical question asked for Dr. Fisher to give his opinion "based on the statistical probability." Assuming this portion of an otherwise proper hypothetical question to have been objectionable, Dr. Fisher's answer was not rendered inadmissible. A physician as an expert witness is called upon to assume the facts, taken from the evidence, as true and to give an opinion on such facts. He may testify to "what might" have caused a death or injury, despite any objection that his testimony is inconclusive and speculative. The testimony is but the opinion of the witness given on facts assumed to be true. It is for the trier of fact to determine the facts. (*Clifford-Jacobs Forging Co. v. Industrial Com.*, 19 Ill.2d 236. See also 3 A. Larson, The Law of Workmen's Compensation, sec. 80.32; Annot., 66 A.L.R.2d 1082, 1118 (1959).) There was sufficient admissible evidence here for the Commission to find that Pinson died from a heart attack.

The employer's argument that there was no evidence from which the Commission could infer a causal relationship between Pinson's work activity and the heart attack does not persuade. It is of course for the Commission to

draw reasonable inferences and conclusions from competent evidence, direct and circumstantial, and on review a court will not reject permissible inferences drawn by the Commission merely because it might have drawn other and different inferences. The function of the court is only to determine whether the finding of the Commission is against the manifest weight of the evidence. *City of Chicago v. Industrial Com.,* 45 Ill.2d 350, 353; *Bruno v. Industrial Com.,* 31 Ill.2d 447, 448-49.

On the day he died Pinson was to begin work at 5 a.m. His body was found lying next to his work station at 7 a.m. Although there was no direct testimony of work activity by him that morning, considering all of the circumstances, including the circumstance that fully two hours had passed after Pinson's shift had begun when it was reported that "something was wrong with Pinson," it was not unreasonable for the Commission to have inferred that he did work that morning. We cannot say the finding of the Industrial Commission was against the manifest weight of the evidence.

For the reasons given, the judgment of the circuit court is reversed and the award of the Industrial Commission is reinstated.

*Judgment reversed;*
*award reinstated.*