MARY MESICK, Plaintiff-Appellant, v. CLARENCE JOHNSON, Defendant-Appellee.

First District (5th Division)   No. 85—0447

Opinion filed February 14, 1986.

James R. Vassilos, of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, James K. Horstman, Craig A. Tomassi, and Lloyd E. Williams, Jr., of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff brought this action to recover for personal injuries she sustained in a collision between defendant's automobile and one in which she was a passenger. Following a trial, the jury found defendant liable and entered a verdict for plaintiff in the amount of $5,000. On appeal, plaintiff contends that she is entitled to a new trial on the issue of damages because (1) the verdict was based on sympathy for the defendant; (2) the trial court erred in (a) giving an incorrect damage instruction to the jury and (b) excluding certain testimony and evidence relating to her injuries.

Since liability is not at issue in this appeal, a recapitulation of the entire trial transcript is unnecessary; therefore, except for the following introductory statement of the circumstances giving rise to this litigation, we will incorporate the facts relevant to the issues presented in our review thereof.

The record reveals that the collision occurred on May 20, 1980, when defendant, Clarence Johnson, made a left turn into the path of the automobile in which plaintiff was a passenger at the intersection of 127th Street and Kedzie Avenue in Blue Island. Upon impact, plaintiff, who had been dozing in the front passenger's seat, was thrown forward, striking her face and right knee against the dashboard. She immediately began screaming to her sister, the driver of the car, that she could not see. She was transported by ambulance to the emergency room of a nearby hospital, examined, treated and then released. At trial, plaintiff sought to introduce evidence that as a result of the accident, she suffered injuries both to her eyes—resulting in chronic diplopia (double vision)—and to her nose—for which she eventually underwent corrective surgery; but over her objection, the trial court excluded or struck all evidence relating to the nasal injuries. The jury found defendant liable and awarded plaintiff $5,000. Her post-trial motion for a new trial on the issue of damages was denied, and this appeal followed.

■ Plaintiff first contends that the trial court abused its discretion in denying her pretrial motion *in limine* regarding the location from which defendant—an elderly man confined to a wheelchair—would testify. She argues that the positioning of him in his wheelchair directly in front of the jury elicited the jurors' sympathy for him and influenced them to assess an inadequate amount of damages.

We find no basis in the record for this argument. Initially, we note that although plaintiff asserts that her attorney made a pre-trial "oral motion *in limine*," the record discloses that the only mention he

made of this matter was to inquire where defendant would be positioned. After a brief discussion with counsel of the various options, the trial court determined that the most feasible was to allow defendant to testify from his wheelchair in front of the bench. While plaintiff's counsel did, at that time, express his concern that the jury might be distracted by the wheelchair, he proposed no alternate suggestions, and when the court explained that it was not possible to place the wheelchair in the witness box, he responded "okay," and proceeded on to another topic. In view thereof, we believe this issue has been waived.

In any event, it is also our opinion that given the totality of circumstances, the trial court's decision was not unreasonable. As noted during argument on plaintiff's post-trial motion on this point, there is nothing in the transcript of proceedings to suggest that it was defense counsel's intention to highlight or emphasize defendant's handicap so as to appeal to the sympathy of the jury. Indeed, defendant's only appearance at trial was on the day he was called as an adverse witness by plaintiff during her case in chief. Since the jurors had already been advised of defendant's age and condition and, in fact, had already seen him seated in his wheelchair next to counsel's table prior to testifying, we see no prejudice to plaintiff from the court's decision that, for purposes of audibility and visibility, defendant be positioned in a centralized courtroom location and that the least disruptive way to accomplish this was to place his wheelchair in front of the bench.

■ We next consider plaintiff's contention that the trial court abused its discretion in excluding certain evidence and testimony relating to her injuries.

Among that evidence was the testimony of Doctor Peter Morse, a board-certified opthalmologist and professor at the University of Chicago (Billings) Hospital. Doctor Morse testified that customarily, in the initial visit, a patient is seen first by a resident physician who takes a medical history and performs a physical examination, and then by the attending physician, who reviews the resident's findings, examines the patient to confirm the preliminary diagnosis and outlines a treatment plan. Doctor Morse further testified that he had no independent recollection of having treated plaintiff 3½ years earlier and that her formal hospital records had been lost but that, according to his own office records, including an abbreviated medical history and a set of X rays taken of plaintiff—both of which he brought with him to court, and which defendant does not deny were hers—she was examined at Billings on February 23, 1981, and that he was the attending physician of record that day. He concluded therefrom that he

had in fact examined her, and further stated that her history reflected that she sustained trauma to the left side of her face in an automobile accident in May 1980, and that an examination performed shortly thereafter revealed that she suffered from restricted elevation of her left eye and double vision.

When plaintiff's attorney asked Doctor Morse whether his records of February 1981 contained any physical findings with respect to plaintiff, defense counsel interposed an objection and, after a lengthy in-chambers discussion, the trial court sustained it, ruling that Doctor Morse would not be allowed to testify from his records of plaintiff absent a demonstration that he had some recollection of having examined her. After further discussion, the trial court took plaintiff's counsel aside for a private, off-the-record conversation, following which the court stated that "counsel *** feels he probably would be better off in not continuing with this doctor ***," and then suggested that he (counsel) inform the jury that because plaintiff's hospital records had been lost, Doctor Morse was being withdrawn as a witness. Counsel complied and the doctor's testimony was concluded.

Defendant argues that plaintiff has waived this issue because "there is no evidence in the record that the trial court instructed plaintiff's counsel to withdraw Doctor Morse" and that, to the contrary, the trial court's statement establishes that he voluntarily withdrew this witness. We find no merit in this argument. It is evident from the transcript that plaintiff's attorney steadfastly maintained his position as to the admissibility of the doctor's testimony and submitted to the court's "suggestion" that Doctor Morse be withdrawn only after the trial court had (1) sustained the defense objection to the doctor testifying from his own records, and (2) took him aside for an off-the-record conversation. Since it had already been determined that Doctor Morse had no independent recollection of plaintiff—which the trial court stated was a prerequisite to admission of his testimony—refusal by counsel to withdraw him would have been futile.

Equally unpersuasive is defendant's argument that this issue is waived because plaintiff also failed to make an offer of proof as to what Doctor Morse's testimony would have shown. Again, the record reveals that plaintiff's attorney informed the court that he would testify that the medical history and X rays in his possession were taken at his direction by hospital personnel whom he, as attending physician, supervised, and that the X rays showed evidence of a fracture of the orbit in plaintiff's left eye. As noted, however, the court ruled that absent personal recollection of plaintiff, Doctor Morse could not testify as a treating physician that he directed the X rays be taken or

to what they disclosed.

Expounding upon that ruling, defendant further argues that since Doctor Morse was not able to testify as a treating physician and had not been tendered as an expert, there was no theory upon which to justify admission of his testimony. We disagree. In our view, the records Doctor Morse brought to court—which defendant does not dispute were plaintiff's—establishing that she was seen at Billings Hospital on February 23, 1981, together with his testimony that as the attending physician on that date he would have had to see plaintiff after the preliminary examination by the resident physician working under his supervision, provided a sufficient foundation to allow him to testify from his office records and, of course, be cross-examined thereabout. See *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 451 N.E.2d 1313.

Moreover, we do not believe that the fact that Doctor Morse had not formally been tendered as an expert witness would, in itself, necessarily preclude him from testifying as such, provided his qualifications to do so were established,[1] since it appears from the transcript that defendant had deposed him prior to trial, thereby eliminating the potential for prejudicial surprise. See *Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, 466 N.E.2d 1191.

The trial court also excluded all evidence presented or proffered by plaintiff through her own testimony as well as that of her husband and several physicians and that as a result of the accident, she incurred a permanent bump on the top of her nose and a deviated septum, which caused a severe blockage of her left nasal passage and necessitated the corrective surgery she underwent three years later.

Specifically, in addition to extensive testimony regarding the injury to her eye—which we need not review here—plaintiff testified that upon impact with defendant's automobile, she was thrown forward and struck the left side of her face against the dashboard of her sister's car. When she was transported to the hospital, she was in pain, her face was swollen and there was a prominent bump just below the bridge of her nose. She consulted Doctor Jacob Brotman, an opthalmologist, three days later regarding the headaches and double vision she was experiencing, but did not, at that time, complain of any problems with her nose, although she stated that it was still sore and

---

[1]Because Doctor Morse's testimony was concluded after defendant's objection, his qualifications to read and interpret X rays of the eyes were never specifically established. However, the trial court observed in chambers that in the light of his education, training and experience, he was, most likely, qualified to do so.

swollen. A few months later, she began to experience sinus headaches and difficulty in breathing, conditions she did not have prior to the accident. In 1983, she consulted Doctor Eugene Tardy, who examined her nose and recommended surgery—which was performed a few weeks later by Doctor Arumugam—involving a submucous resection to correct the deviated septum, reconstruction of the bridge to eliminate the bump and cosmetic adjustment of the tip. The trial court found that plaintiff's testimony had failed to establish that the nose problems she described were related to the accident and indicated that it would be stricken unless a causal relationship were shown by other evidence.

Thereafter, Mark Mesick, plaintiff's husband, testified that when he saw plaintiff in the emergency room a few hours after the accident, he noticed that her right eye was swollen and blackened and that she had a bump on the top of her nose which she did not have prior thereto.

Following examination of Mr. Mesick, plaintiff's counsel moved to recall plaintiff "for the limited purpose of establishing trauma to the nose area following the accident," but the court denied the motion, stating, "I think it's quite unfair to put the plaintiff back on to highlight this portion of your case immediately prior to the *** doctors coming on. *** She was on the stand for a long time. This area was completely explored, and if an error was made, I think, it's unfair to correct that error at this point."

Dr. Jacob Brotman, whose specialty is opthalmology, then testified that when he saw plaintiff on May 5, 1980, she complained of double vision, pain and swelling—which was quite noticeable on the left side of her face, particularly over the maxillary area and along the lateral surface of her nose. When he next saw her, on May 23, 1980, the swelling along the nasal portion of the left side of her face had subsided somewhat, but the double vision problem for which she had consulted him was still present. On cross-examination, Doctor Brotman stated that when he examined the interior of her nose during the first visit in May, he did not see any deviation of her septum or other internal tissue damage, nor did he recall or his records reflect, the presence of a bump on the top of her nose. On redirect examination, however, he reiterated that the left side of her face along the nasal area was quite swollen, and added that, in any event, since people are sometimes born with irregular nasal humps and because he had not seen plaintiff's nose prior to the accident, he might not have noted the bump in his records even if he had observed it. Doctor Brotman saw plaintiff a total of four times between May 1980 and January

1981, and then referred her to Doctor Morse for further treatment of her diplopia. He saw her again in 1982 and 1983 in connection with sinus problems she was experiencing, but he did not believe the sinus condition was related to the accident.

Plaintiff also sought to introduce the evidence deposition of Doctor Eugene Tardy, a board-certified otolaryngologist specializing in reconstructive surgery of the head and neck. In it, Doctor Tardy testified that he saw plaintiff in his office on September 9, 1983, and that in the medical history taken by his nurse she related the circumstances of the automobile accident and complained of experiencing double vision and of blockage of her nose. Among the findings of the physical examination he performed were the presence of an irregular prominence on the top of her nose and a deviated septum—which, he explained, is a deflection or deviation of the bone and cartilage in the nose—causing, in plaintiff's case, a blockage of approximately 90% in her left nostril. Doctor Tardy stated that because the nose is a nonstatic organ that shrinks and swells under various normal daily conditions, there does not exist a reliable medical tool or test to accurately measure the degree of blockage and that his estimation thereof was based on his experience examining and evaluating thousands of other patients from which he gained knowledge of what is normal. He also stated that the most common cause of a deviated septum is trauma to the nasal area and while it might also be inherited, nothing in plaintiff's history indicated that hers was a congenital condition. When asked if, based on a reasonable degree of medical certainty, the trauma she suffered in the accident might or could have been the cause of plaintiff's deviated septum, Doctor Tardy responded that although it is not possible to determine the cause in every instance, in this case, the deviation was "consistent" with the trauma plaintiff related having sustained in the collision. Following his examination and diagnosis, Doctor Tardy recommended that plaintiff first obtain a specialized opthalmological consultation to determine the status of her double vision and what, if any, treatment she required for it before undergoing surgery to correct her nasal problems. He added that a deviated septum is a fundamental causative factor in the development of chronic sinus disorders and breathing difficulties.

On cross-examination, Doctor Tardy acknowledged that plaintiff's single visit to his office was approximately 3½ years after the accident and restated that it is not medically possible to objectively determine whether a specific event or trauma caused a deviated septum unless the person was examined both immediately before and after it, and that he relies to a large extent on the patient's medical history.

He also stated that his examination of plaintiff revealed no evidence of a nasal fracture, but that the passage of 3½ years would make detection of such an injury difficult.

Following the in-chambers presentation of the deposition, defense counsel moved to exclude it on the ground that Doctor Tardy's testimony failed to establish any causal connection between the findings of his examination and the accident. The trial court agreed, stating,

"It's clear to me that this man is unable to testify. If he was here, we would strike his testimony if he could not testify with a reasonable degree of medical certainty that the occurrence *** in 1980 was the cause of the condition.

[The cases] say it can't be a possibility. It can't be a might. It can't be a could. *** That's why those words 'reasonable degree of medical certainty' have become words of art. Not a possibility; not a probability; not a consistency. *** [T]his man's testimony says that the accident might or could have caused the deviated septum. Now that testimony is not permitted. It's got to be a reasonable degree of medical certainty. [The] supreme court says might or could is not sufficient. ***."

Plaintiff also made an in-chambers offer of proof as to what evidence she intended to present through the testimony of Doctor Subrumanian Arumugam, the physician who performed surgery on her nose. In that offer of proof, Doctor Arumugam testified that when plaintiff first came to his office in late September 1983, she complained of breathing difficulty through the left nostril and a bump on the top of her nose, which, she related in the history taken by his nurse, resulted from the 1980 automobile accident. Upon examination of her, he observed an irregular hump on her nose, a slight drooping of the tip of the nose and a leftward deviation of the septum. She informed him that the left nostril became obstructed after the accident and that within a few months she also developed sinus infections and experienced numerous sinus headaches. She also told him that she suffered other facial injuries including a fracture of the orbit of the left eye and of the nasal bone. In response to the court's inquiry, Doctor Arumugam stated that such fractures could have been seen in an X ray for a few weeks after the injury but that a very fine fracture might not be detectable even to a radiologist. When asked if, in the light of his records and physical examination of plaintiff, it was his opinion based on a reasonable degree of medical certainty that the nasal hump might or could have been caused by the accident, he responded, "With the history and physical findings, yes, I could come to that conclusion," noting, however, that he did not see plaintiff's nose

prior to the accident. When the court further inquired whether his opinion would be affected if he were informed that an eye, ear, nose and throat specialist had examined the interior of plaintiff's nose three days after the accident and found it normal, Doctor Arumugam stated that even a fractured nose might appear normal after three to four days and that the fracture could, within the next several weeks or months, either heal normally or with an irregularity. The trial court then asked if his opinion as to causation of the hump would be altered if he were advised that the same specialist examined plaintiff four more times over a period of nine months and still found no nasal irregularity. Doctor Arumugam responded that given such circumstances it would be his opinion that the nasal hump did not result from the accident. Plaintiff's counsel then pointed out, however, and the court acknowledged, that there was no evidence of such examinations having been performed by Doctor Brotman, and asked Doctor Arumugam whether, to a reasonable degree of medical certainty, plaintiff's deviated septum might or could have been caused by the accident. The doctor responded that, disregarding the results of the examinations referred to by the trial court, it was his opinion, based on his examination and plaintiff's description of the accident as well as the symptoms she reported experiencing thereafter, that the deviated septum definitely could have resulted from plaintiff striking her face against the dashboard, but that if external examinations as those described by the trial court had been performed and showed no injury, then he would reserve his opinion.

The trial court then ruled that neither Doctor Arumugam's testimony nor the other evidence proferred by plaintiff was sufficient to establish a causal relationship between the collision and her nasal injuries and instructed the jury to disregard all testimony and exhibits previously presented relating thereto.

■ It is fundamental that liability in a personal injury action cannot be based on speculation or conjecture (*Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406), and that the burden is on the plaintiff to produce evidence, either direct or circumstantial (*Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893), to show not only that injuries exist but also that they were the result of the occurrence at issue (*Bugariu v. Conley* (1981), 93 Ill. App. 3d 571, 417 N.E.2d 719). However, the plaintiff is not required to prove the case beyond a reasonable doubt or negate entirely that defendant's conduct was not the cause of the injury (Prosser, Law of Torts sec. 41 (5th ed. 1984)), and it is only where the evidence and all reasonable inferences which could be

drawn therefrom, when viewed most favorably for plaintiff so overwhelmingly favors defendant that no reasonable person could find for plaintiff, that the decision as to causation should be taken from the jury, whose function is to weigh contradictory evidence, judge the credibility of the witnesses and make the ultimate conclusion as to the facts (*Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212; *Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893).

■ Considering the evidence plaintiff sought to introduce in its entirety, it is our view that the jury in the instant case reasonably could have concluded that the nasal conditions at issue were caused by the collision and that, like the testimony of Doctor Morse, its exclusion was error.

Specifically, plaintiff testified to being thrown forward against the dashboard and described the facial swelling, pain, nasal bump, blockage and sinus problems that developed thereafter as well as the treatment she received therefor. Contrary to the trial court's determination, since there is no requirement that a plaintiff produce medical testimony concerning the nature and consequences of injuries she sustained (*Fisher v. Patel* (1981), 93 Ill. App. 3d 694, 417 N.E.2d 691), these were all matters about which she was competent to testify and which, even alone, were sufficient to raise a question for the jury on the issue of causation. In addition, her testimony was corroborated, at least partially, by that of her husband, who testified that he observed a bump on her nose immediately after the collision which she did not have prior thereto and by Doctor Brotman, who testified that three days after the accident the left side of her face under the eye and along the nasal area was noticeably swollen and that she complained of having considerable pain. The fact that there were some inconsistencies in their testimony, such as her husband's statement that it was her right rather than her left eye that was blackened and Doctor Brotman's testimony that he did not recall observing the hump on her nose and found no evidence of a deviated septum when he examined her three days after the accident, are matters that go only to the weight of the testimony, not to its admissibility.

■ Similarly, with regard to the evidence deposition and testimony of Doctors Tardy and Arumugam, respectively, we note that while it is true that an expert witness may not base his opinion on conjecture or speculation (*Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893), it is also well-settled that a physician may testify to what might or could have caused an injury despite any objection that the testimony is inconclusive.

"[Such] testimony is but the opinion of the witness given on facts assumed to be true." (*Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 539, 343 N.E.2d 504, 506.) It remains for the trier of fact to determine the facts and the inferences to be drawn therefrom. *Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 343 N.E.2d 504; *Nicholas v. City of Alton* (1982), 107 Ill. App. 3d 404, 437 N.E.2d 757; *Presswood v. Morris* (1979), 70 Ill. App. 3d 513, 388 N.E.2d 844; *Nowicki v. Union Starch & Refining Co.* (1971), 1 Ill. App. 3d 92, 272 N.E.2d 674; *Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236, 166 N.E.2d 582.

Here, because Doctors Tardy and Arumugam each stated that from his examination of plaintiff and the medical history she related, it was his opinion based on a reasonable degree of medical certainty that the accident might or could have been the cause of her nasal injuries, their testimony was proper and admissible and, therefore, erroneously excluded.

We are not persuaded otherwise by defendant's argument that Doctor Tardy's statement on cross-examination, that "there is no way I can state objectively as to the cause of any deviated septum" negates his direct testimony that the condition was "consistent" with the accident plaintiff described. When read in context, it is clear that Doctor Tardy was not recanting his original testimony but simply expanding upon it, explaining that because a deviated septum is an internal injury which, though usually caused by trauma, can be congenital, unless a patient is examined immediately before and after a particular event, there is no tool or test available in the field of medicine from which a physician can determine with certainty whether that event caused it.

■ Neither do we agree that Doctor Arumugam "retreated" from his opinion that the nasal injuries definitely could have been caused by the accident when, after a series of questions posed by the court in which the doctor was asked to assume numerous facts, including the results of several examinations purportedly performed by Doctor Brotman, he stated, "If Doctor Brotman does external noses, I would say that most probably *** nothing like this happened from the injury. But if he does not do external noses, I would reserve my opinion." In the first instance, a careful reading of the offer of proof transcript reveals that the questions posed by the court referred primarily to causation of the hump on plaintiff's nose rather than to the deviated septum. Furthermore, plaintiff's counsel pointed out, and the court conceded, that there was no testimony that Doctor Brotman, whom defendant consulted in connection with the diplopia from which

she suffered, had, in fact, performed external examinations of her nose each of the four times he saw her as the court asked Doctor Arumugam to assume. Moreover, as noted earlier, the fact that there may be inconsistencies does not render the testimony inadmissible, but goes only to the weight to be accorded it—a matter within the province of the jury. See *Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893.

■ It is also plaintiff's position that she should have been allowed to retake the witness stand to provide additional testimony relating to her nasal injuries. In view of our determinations that the remainder of the evidence and testimony thereabout should have been submitted to the jury for consideration and that she is, therefore, entitled to a new trial on the issue of damages, we will address this issue only briefly. It suffices to say that although the decision to allow a party to present additional evidence by recalling a previously examined witness is not, as plaintiff asserts, a matter of right—even where the request is made before the close of the party's case in chief—but, rather, is one which rests within the sound discretion of the trial court (*Savitch v. Allman* (1977), 52 Ill. App. 3d 884, 368 N.E.2d 224), and that discretion should be exercised liberally so as to promote fairness and justice in a trial (*Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 325 N.E.2d 328).

■ Here, plaintiff's attorney explained in his motion to recall her—made well before the close of her case in chief—that he wished to pose additional questions concerning the nasal injuries, which he realized only after reviewing the transcript of her original examination, he had inadvertently failed to ask. The trial court nevertheless denied the request, stating that the subject had been fully explored and that if an "error" was made, correcting it just before the presentation of her medical evidence would "unfairly highlight" that portion of her case. It is our opinion that in the light of the trial court's ruling shortly before that plaintiff's original testimony did not establish causation, and its repeated admonitions that the testimony would be struck if a causal relationship were not shown, and because, as noted above, the burden was on plaintiff to prove the essential elements of her case, the trial court's denial of her counsel's motion to recall her constituted an abuse of discretion.

Finally, since we find it necessary to remand this case for further proceedings on the issue of damages, we need not consider plaintiff's remaining contention regarding an incomplete damage instruction given to the jury which the trial court admitted was incorrect as it is unlikely that it will reoccur.

For the reasons stated, we affirm the judgment for plaintiff as the issue of liability, but reverse the judgment as to the award of damages, and this cause is remanded for a new trial on the issue of damages only.

Affirmed in part, reversed in part, remanded as to damages only.

PINCHAM and LORENZ, JJ., concur.