MARY ANN GEERS, Plaintiff-Appellee, v. ANTHONY E. BRICHTA *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—91—0527

Opinion filed June 7, 1993.—Rehearing denied August 2, 1993.

Stern & Rotheiser, of Chicago (Robert D. Shearer, Jr., of counsel), for appellants.

Anesi, Ozmon & Rodin, Ltd., of Chicago (Marc A. Taxman, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Mary Ann Geers, brought this action in negligence against defendants, Anthony E. Brichta (Brichta) and the ROI Corporation (ROI), for injuries she sustained as a result of an automobile collision with Brichta. Following trial, the jury returned a verdict in

favor of plaintiff, awarding her a total of $40,000 in itemized damages, and judgment was entered thereon. Defendants' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, was denied by the trial court. On appeal, defendants contend that: (1) the verdict was against the manifest weight of the evidence; (2) the trial judge improperly admitted the deposition testimony of two of plaintiff's treating physicians; (3) the trial judge improperly denied defendant's oral request to present the testimony of defendants' expert physician; (4) the trial judge erred in failing to rule on defendants' motion for mistrial made after plaintiff's attorney violated the court's *in limine* order; and (5) the trial judge erred in allowing plaintiff's jury instructions on the computation of damages for future pain and suffering. For the following reasons, we affirm.

Prior to discussing the merits of this appeal, we find it necessary to comment on several matters of appellate procedure. Supreme Court Rule 341(e)(1) (134 Ill. 2d R. 341(e)(1)) states that the "Points and Authorities" of an appellant's brief "shall consist of the headings of the points and subpoints as in the Argument, with the citation under each heading of the authorities relied upon or distinguished, and a reference to the page of the brief on which each heading and each authority appear." The points and authorities section of defendant's amended brief contains no page references. In addition, defendant's nature of the case section contains improper argument in violation of Supreme Court Rule 341(e)(2). 134 Ill. 2d R. 341(e)(2).

Defendants have failed to comply with the above-stated civil appeals rules. These rules are not merely suggestions (see *First National Bank v. Loffelmacher* (1992), 236 Ill. App. 3d 690, 603 N.E.2d 80 (*Marengo*); *People v. Wilk* (1988), 124 Ill. 2d 93, 103, 529 N.E.2d 218) and it is within our discretion to strike defendant's brief and dismiss the appeal based on violations of these rules. (*Marengo*, 236 Ill. App. 3d at 692, 603 N.E.2d at 81.) In fact, we struck defendants' original brief for violations of Supreme Court Rule 341(a) (134 Ill. 2d R. 341(a)), which limits briefs to 75 pages and provides that "neither narrow margins nor any other device shall be employed to evade the page limitation." We note that defendant's original brief contained both of these violations. While we do not condone the type of careless disregard for the supreme court rules evidenced by defendants' brief, we decline at this time to penalize these defendants so severely. We will instead proceed to discuss the merits of this case, disregarding any inappropriate or unsupported statements in reviewing this matter. *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 559, 569 N.E.2d 248.

PRETRIAL ORDERS

The record reveals the following relevant facts. Plaintiff filed a complaint against defendants on September 27, 1984. At a pretrial conference on September 29, 1986, plaintiff and defendants agreed to proceed to trial without presenting any medical experts, other than treating physicians, and Judge Lawrence A. Passarella entered an order barring entry of any expert medical testimony at trial pursuant to Supreme Court Rules 218 and 220. 134 Ill. 2d Rules 218, 220.

On August 17, 1987, pursuant to an agreement between the parties, Judge Phillip A. Fleischman entered an order requiring plaintiff to appear for a medical examination. On October 27, 1987, defense counsel sent a letter to plaintiff's counsel requesting that plaintiff present herself to defendants' "medical expert," Dr. William Hejna, for an examination. On December 1, 1987, and January 11, 1988, defense counsel sent out second and third requests for plaintiff to present herself to defendants' "medical expert." Subsequently, on April 7, 1988, defendants filed a motion for sanctions against plaintiff pursuant to Supreme Court Rule 219(c), for her failure to submit herself for examination. Concurrently, plaintiff filed a motion to bar defendants' medical expert's testimony, citing in support the September 26, 1986, order entered by Judge Passarella barring both parties from calling any expert witnesses at trial. At the hearing on both parties' motions on April 7, 1988, Judge Daniel J. White entered an order both requiring plaintiff to present herself for a medical examination and barring defendants from presenting any expert medical testimony at trial. Plaintiff was examined by Dr. Hejna on April 26, 1988. On July 6, 1990, this cause was assigned to Judge Jerome T. Burke for trial and was subsequently continued to October 22, 1990.

Prior to trial, Judge Burke denied defendants' request to present Dr. Hejna as a medical expert, based upon the prior orders of Judges Passarella and White barring such testimony. Judge Burke allowed plaintiff's counsel to refer to Dr. Hejna's examination in his opening statement, as long as he did not discuss Dr. Hejna's report. During the course of trial, defendants renewed their request to present Dr. Hejna, and Judge Burke denied their request. Judge Burke further allowed the presentation of the deposition testimony of Dr. Linda Claire Smith over defendants' objection.

THE TRIAL

At trial, plaintiff testified that on April 15, 1983, she was driving her 1979 Chevrolet Nova westbound on Windsor Avenue in Oakbrook,

Du Page County, Illinois, at approximately 2 p.m. Plaintiff reached the intersection of Windsor and York Road, and began to make a left-hand turn onto York, when her car stalled in the middle of the intersection. Immediately, the rear of plaintiff's car was struck by a Cadillac limousine driven by Brichta and owned by ROI. Plaintiff felt her head snap back upon the impact of the limousine hitting her car. When plaintiff got out of her car, she saw that the front grille, bumper and headlight of the limousine sustained damage from the impact. The damage to plaintiff's own car was limited to a little dent and a scratch. Plaintiff declined to go to the hospital following the incident.

Later that evening, however, plaintiff began experiencing stiffness in her neck, headache, back pain and blurred vision. Plaintiff's husband drove plaintiff to the emergency room of St. Joseph's Hospital, where the examining physician prescribed pain killers and muscle relaxants for the pain in her neck and upper back. On April 21, 1983, plaintiff went to see Dr. Kishor Ajmere for her persistent pain. Dr. Ajmere admitted plaintiff to Silver Cross Hospital (Silver Cross), where plaintiff stayed for one week. Following her release, plaintiff continued to experience severe headaches and constant neck and back pain. Dr. Ajmere sent plaintiff for physical therapy at Silver Cross for about one month, and then referred plaintiff to Dr. Michael Condon for chiropractic treatment. She was treated by Dr. Condon from September through November 1983, and again in April 1984. Plaintiff testified that the chiropractic treatment caused her severe neck pain, and she continued to take pain pills and muscle relaxants. Dr. Ajmere then sent plaintiff to Dr. Duffy, an orthopedic surgeon, for physical therapy treatments. Plaintiff experienced severe headaches as a result of the therapy.

Plaintiff testified that she was not treated for pain during a period of time between 1985 and mid-1986. However, in 1987 plaintiff went back to Dr. Ajmere for her chronic pain, and he referred her to a second chiropractor for treatment. Plaintiff started to work full-time some time after that and experienced pain at work most of the time. Plaintiff testified that she was examined by an orthopedic surgeon in April 1988, pursuant to a court order, but she could not remember Dr. Hejna's name without counsel refreshing her recollection.

In April 1989, plaintiff began experiencing severe neck pain to the point where she could not raise her head and had difficulty swallowing. Dr. Ajmere admitted plaintiff to Silver Cross, where she remained for three days. Dr. Ajmere then referred plaintiff to Dr. Leonard Rutkowski, a neurologist. Dr. Rutkowski tested plaintiff for

her difficultly in swallowing, gave her medication, and referred her to Dr. Linda Claire Smith, a physical therapist. Dr. Smith examined plaintiff for the range of motion in her neck and arms, and ordered an EMG test. Dr. Smith prescribed a physical rehabilitation program for plaintiff which included heat treatments, massage and exercises. At times, plaintiff experienced headaches and neck pain as a result of the exercises. At the time of trial, plaintiff was still being treated with exercise and pain medication. Plaintiff testified that she is no longer able to do housework, or engage in sporting activities such as bowling, and at times has difficulty driving because of neck spasms.

Plaintiff further testified that in 1975, she and her family were involved in an automobile accident, after which she sought medical attention. Plaintiff was treated for a tightness in her neck, but after a few months, experienced no pain and was not treated further. At that time, no medication was prescribed, and plaintiff was not limited in her normal activities.

Defendant Anthony Brichta testified as an adverse witness in the plaintiff's case. On April 15, 1983, Brichta was employed as a limousine driver for American Limousine, owned by the ROI Corporation. Brichta admitted that at the time of the accident, he was looking right, over a grade in the road, as he turned the limousine to the left, when he collided with plaintiff's car. Brichta admitted that he saw plaintiff's brake lights prior to the collision. Brichta testified that the limousine sustained damage to the front bumper and headlight assembly, which includes the fiber glass front. Brichta stated that after the collision, he asked plaintiff if she was okay, and she told him that she was all right.

Michael Geers, plaintiff's son, testified that prior to the accident on April 15, 1983, plaintiff was not limited in her normal household activities. After the accident, plaintiff was not able to drive her children to sporting events, and Michael was called upon to run these and other errands for plaintiff. In addition, Michael drove plaintiff to her physical therapy and doctors' appointments.

In June 1985, plaintiff's husband was diagnosed as suffering from leukemia. Michael continued to run errands for his mother, and now also drove his father to and from his doctor visits. Michael's father died in December 1986. Michael stated that his father's illness and death was particularly difficult for the plaintiff.

Plaintiff then submitted the deposition testimony of Dr. Kishor Ajmere, which was read to the jury. Dr. Ajmere testified that he is a specialist in internal medicine and that he initially examined plaintiff on April 21, 1983. At that time, plaintiff complained of headaches,

backache, neck pain, dizziness, blurry vision and tremors over her body following the accident on April 15. Dr. Ajmere explained that plaintiff suffered from a flexion-extension injury, which is manifested in pain and stiffness in the neck. From his examination, Dr. Ajmere concluded that plaintiff's neck movements were limited and painful. He further noted that she had a squint in her left eye. Dr. Ajmere gave plaintiff prescriptions for a muscle relaxant and a pain killer.

On April 23, 1983, plaintiff returned to Dr. Ajmere complaining of nausea, vomiting, and continued headaches, dizziness, and cervical pain. Dr. Ajmere admitted plaintiff to the hospital to test for a possible cerebral concussion. At that time, plaintiff's neck movements were painful and limited. Plaintiff also had marked spasms of the cervical spine muscles. Dr. Ajmere discharged plaintiff from the hospital on April 29, 1983, and prescribed medication and physical therapy. Dr. Ajmere diagnosed plaintiff as suffering from acute cervical strain, and a mild cerebral concussion. Dr. Ajmere stated that in his opinion, based upon a reasonable degree of medical certainty, it was possible that the symptoms from which plaintiff suffered associated with the mild cerebral concussion were related to the April 15, 1983, automobile accident.

Dr. Ajmere saw plaintiff again on May 5, 1983, for her complaints of headaches, nausea, neck pain and nervousness. The results of plaintiff's lab tests were normal. Dr. Ajmere continued to prescribe medication for plaintiff. Dr. Ajmere saw plaintiff again on May 16, 1983, and noted that her neck movements were stiff. He advised her to continue physical therapy. On June 2, 1983, plaintiff returned to Dr. Ajmere. At that time, plaintiff felt better, but still had pain and stiffness. Dr. Ajmere again advised plaintiff to continue physical therapy.

Dr. Ajmere saw plaintiff several more times between June 21, 1983, and October 13, 1983, and treated her for her persistent physical pain. At that time, plaintiff was also seeing a chiropractor. On June 4, 1984, Dr. Ajmere again examined plaintiff, and referred her to Dr. Rentschler, an orthopedic surgeon.

Dr. Ajmere next saw plaintiff on April 18, 1987. At that time, plaintiff still complained of cervical spine pain and stiffness radiating to her arms. Dr. Ajmere's notes indicated that plaintiff was seeing Dr. Duffy, an orthopedic surgeon, and that Dr. Duffy had diagnosed plaintiff as suffering from cervical strain. Dr. Ajmere agreed with Dr. Duffy's diagnosis.

Dr. Ajmere saw plaintiff again on April 5, 1989. At that time, plaintiff said that she had difficulty in breathing, that she was feverish, had pain, congestion, and was feeling weak. Dr. Ajmere concluded

that her breathing difficulty was due to an upper respiratory tract infection (a cold). Dr. Ajmere saw plaintiff again on May 5, 1989, when she went to the emergency room of Silver Cross because of severe pain in the left side of her neck. She was admitted to the hospital from the emergency room, and Dr. Ajmere ordered an MRI scan of the cervical spine. The MRI test revealed a disc protrusion or "spurring formation," an arthritic condition manifested in a patient as pain, stiffness and limitation of the movements of that particular point. Dr. Ajmere stated that it was possible that this spurring or bulging disc was due to the April 15, 1983, automobile accident.

On May 20, 1989, plaintiff mentioned that she was feeling better, and Dr. Ajmere noted that her pain had diminished. Dr. Ajmere allowed plaintiff to return to work on May 22, 1989. Dr. Ajmere last saw plaintiff on October 13, 1990. At that time, plaintiff mentioned that she had seen Dr. Smith for rehabilitation and Dr. Crone for difficulty in swallowing. Upon his examination, Dr. Ajmere noted that plaintiff's neck movements were painful and stiff. He advised plaintiff to continue her medications. Dr. Ajmere concurred with Dr. Rutkowski's diagnosis of plaintiff as suffering from chronic fibromyositis, an inflammation of the muscles and ligaments. Dr. Ajmere stated that a patient may suffer from chronic pain and stiffness as a result of the overstretching of these tissues, and that this extension-flexion injury can cause pain and suffering. He indicated that he did not know how long plaintiff's pain would last, but that it may last for the rest of her life.

Plaintiff also presented the deposition testimony of Dr. Linda Claire Smith to the jury. Dr. Smith testified that she specializes in physical medicine and rehabilitation. Dr. Smith first examined plaintiff on January 12, 1990. At that time, Dr. Smith obtained plaintiff's medical history and reviewed the X rays and other test results provided by Dr. Ajmere. Plaintiff told Dr. Smith that she was in good health and pain free until April 15, 1983, when she was involved in an automobile collision. From her examination, Dr. Smith noted that plaintiff had a very limited active range of motion of her cervical spine, and that her muscle activity level was reduced. Plaintiff's neck was tender when pressed, and plaintiff complained of pain. Dr. Smith diagnosed plaintiff as suffering from chronic neck and shoulder pain due to an old cervical strain injury. Dr. Smith concluded that it was possible that the pain and suffering experienced by the plaintiff were a result of the automobile accident on April 15, 1983. On further redirect examination, Dr. Smith reviewed the report of Dr. Hejna and stated that she agreed with his diagnosis that plaintiff suffered from a "flexion-

acceleration injury of the cervical spine with residual symptomology." Dr. Smith stated that the opinion of Dr. Hejna, a board-certified orthopedic surgeon, would be something that she would reasonably rely on in forming her diagnosis. Dr. Smith last examined plaintiff in August of 1990 and felt that plaintiff was in slightly better condition than on her first visit.

Plaintiff's counsel read the table of mortality to the jury. According to the table, the life expectancy of plaintiff, at age 43, is 37.8 years.

At the conclusion of the testimony, the trial judge denied plaintiff's motion for directed verdict. Following closing argument, the trial judge allowed, over defendants' objection, plaintiff's proposed jury instructions numbers 20 and 22 regarding future pain and suffering, and plaintiff's jury instruction number 23 pertaining to plaintiff's life expectancy. A jury verdict was entered in favor of the plaintiff awarding her itemized damages in the amount of $40,000, including $13,000 for future pain and suffering. The trial judge entered judgment on the verdict and subsequently denied defendants' post-trial motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. This timely appeal followed.

Opinion

Defendants initially contend that the jury's verdict in plaintiff's favor is against the manifest weight of the evidence. Defendants argue that the plaintiff failed to establish a causal connection between the collision in 1983 and plaintiff's present medical condition.

It is the jury's function to determine the preponderance of the evidence, and a reviewing court will reverse only if that determination is against the manifest weight of the evidence. (*Pharr v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 509, 581 N.E.2d 162.) A jury's verdict will not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. *Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 9, 511 N.E.2d 1199, 1205.

Liability in a personal injury action cannot be based on speculation or conjecture, and the burden is on the plaintiff to produce evidence, either direct or circumstantial, to show not only that injuries exist, but also that they were the result of the occurrence at issue. (*Mesick v. Johnson* (1986), 141 Ill. App. 3d 195, 204, 490 N.E.2d 20, 27.) However, the plaintiff is not required to prove the case beyond a reasonable doubt or negate entirely that defendant's conduct was not the cause of the injury. (*Mesick*, 141 Ill. App. 3d at 204.) There is no

requirement that a plaintiff produce medical testimony concerning the nature and consequences of injuries she sustained. Rather, the plaintiff's testimony alone is sufficient to raise a question for the jury on the issue of causation. *Mesick,* 141 Ill. App. 3d at 205.

■ Considering plaintiff's evidence in its entirety, the jury in the present case reasonably could have concluded that plaintiff's condition was caused by the 1983 collision. Specifically, plaintiff testified that prior to April 15, 1983, she was in "fine physical condition" and had no physical complaints. However, upon impact of the collision on that day, she felt her neck snap. Beginning that night and up through the date of trial, plaintiff experienced severe neck pain. Plaintiff's testimony was corroborated by the testimony of her son, Michael Geers, who stated that plaintiff did not suffer from any pain prior to the collision, and by Drs. Ajmere and Smith, who treated plaintiff for her severe neck pain.

Defendants presented no competent evidence that plaintiff's injuries resulted from the collision in 1975. Viewing the evidence in the light most favorable to the plaintiff, plaintiff proved a causal connection between her injuries and the collision, and the jury's verdict is not against the manifest weight of the evidence.

Next, defendants contend that the trial judge improperly admitted the deposition testimony of Drs. Ajmere and Smith because both testified that it was only "possible" that plaintiff's medical condition was caused by the 1983 collision.

■ A physician may testify to what might or could have caused an injury despite any objection that the testimony is inconclusive. (*Mesick,* 141 Ill. App. 3d at 205.) Such testimony is but the opinion of the witness given on facts assumed to be true. (*Mesick,* 141 Ill. App. 3d at 206, quoting *Beloit Foundry v. Industrial Comm'n* (1976), 62 Ill. 2d 535, 539, 343 N.E.2d 504, 506.) It remains for the trier of fact to determine the facts and the inferences to be drawn therefrom. *Mesick,* 141 Ill. App. 3d at 206.

Defendants cite *Simon v. Lumbermens Mutual Casualty Co.* (1977), 53 Ill. App. 3d 380, 368 N.E.2d 344, and *Sommers v. American Economy Insurance Co.* (1972), 8 Ill. App. 3d 450, 289 N.E.2d 712, for the proposition that a medical expert may not express an opinion that is based upon conjecture or speculation. These cases each involved decedents who were driving automobiles when they were involved in an accident. Each decedent was found after the accident, gasping for air, and apparently died shortly thereafter of a heart attack. In *Sommers,* the testimony of the decedent's personal physician was stricken because the physician admitted that his opinion as to the

decedent's cause of death was a guess. The appellate court held that in giving an opinion, an expert witness is not permitted to guess nor to base the opinion on conjecture. (*Sommers*, 8 Ill. App. 3d at 452.) Similarly, in *Simon*, the court concluded that the testimony of the physician who had treated the decedent for high blood pressure was mere speculation because the physician was not on the scene, did not view the body, and his testimony, based on a hypothetical, was that the decedent's heart attack could have been caused by either the trauma of the accident or hypertensive disease. *Simon*, 53 Ill. App. 3d at 382-83.

These cases are factually distinguishable from the present case. Here, Drs. Ajmere and Smith each testified that from their examinations of plaintiff, and the medical history plaintiff related to each of them, they were of the opinion, based on a reasonable degree of medical certainty, that it was possible that plaintiff's injuries were related to the April 15, 1983, collision. The testimony of these doctors meets the "might or could" standard set forth in *Mesick*, and therefore was properly admitted.

Next, defendants contend that the trial judge erred in denying their request at trial to present the testimony of Dr. William Hejna pursuant to Illinois Supreme Court Rule 220 (134 Ill. 2d R. 220) and that Dr. Hejna's testimony was improperly barred prior to trial. Defendants further argue that they were prejudiced by various references to Dr. Hejna's exam at trial.

The purpose of Rule 220 is to ensure adequate trial preparation through the timely disclosure of expert witnesses (*McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 911, 511 N.E.2d 912, 918), and the decision to bar an expert witness is well within the sound discretion of the trial court. (*Castro v. South Chicago Community Hospital* (1988), 166 Ill. App. 3d 479, 482, 519 N.E.2d 1069.) Once the court has ruled on a discovery matter, that ruling should not be reversed by another member of the court unless there is a change of circumstances or additional facts which warrant such action. *Balciunas v. Duff* (1983), 94 Ill. 2d 176, 446 N.E.2d 242, 247.

The record in the present case reveals that on September 29, 1986, the parties appeared before Judge Passarella for a pretrial conference and agreed to proceed to trial without presenting any medical experts, other than treating physicians, pursuant to Supreme Court Rules 218 and 220. (134 Ill. 2d Rules 218(a)(4), 220(b).) At the conclusion of the conference, Judge Passarella entered an order barring both parties from presenting any undisclosed expert witnesses at trial.

On August 17, 1987, the parties appeared before Judge Fleischman and entered an agreed order compelling plaintiff to appear for a medical examination. When plaintiff failed to appear for the medical examination, defendants filed a motion for sanctions against plaintiff under Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)) to bar evidence of plaintiff's medical damages. At the hearing on defendants' motion before Judge White, defendants asked to present Dr. Hejna as an expert at trial. At that time, defense counsel admitted that he did not disclose Dr. Hejna as his expert witness under Rule 220. Judge White denied defendants' request and entered an order barring defendants from presenting any expert testimony at trial based on Judge Passarella's prior order. Following Judge White's ruling, defense counsel agreed that he would return to court at a later date if he wanted to disclose Dr. Hejna as an expert witness under Rule 220.

Defense counsel never appeared before the court to request that Dr. Hejna appear as an expert witness pursuant to Rule 220. Subsequently, at trial, Judge Burke denied defendants' request to present Dr. Hejna as a witness based on the two prior orders of the court barring entry of expert testimony at trial.

Defendants claim that Dr. Hejna should have been allowed to testify as an expert because there was a "change of circumstances." In support, defendants rely on *Cometo v. Foster McGaw Hospital* (1988), 167 Ill. App. 3d 1023, 522 N.E.2d 117. There, plaintiff's disclosed medical expert refused to testify as an expert witness because he was reluctant to testify against another member of his profession. Plaintiff was unable to locate a replacement expert witness by the date of the final pretrial conference, and the motion judge barred plaintiff from using any undisclosed and unidentified experts at trial. Subsequently, defendants filed motions for summary judgment, and plaintiff filed a response which included the counteraffidavit of the previously disclosed expert witness, who by that time had agreed to testify. At the hearing, the trial judge sent the parties back to the motion judge for clarification of his order barring plaintiff from using any experts at trial. The motion judge issued a clarifying order barring the counteraffidavit of plaintiff's expert based on his prior order. *Cometo*, 167 Ill. App. 3d at 1025-27.

On appeal, this court found that the cooperation of plaintiff's expert and the five-month extension for commencement of trial constituted sufficient change in circumstances from those that existed when the Rule 220 sanctions barring plaintiff's expert witnesses were imposed. This court further excused the late disclosure of plaintiff's expert witness, noting that the reluctance of members of the medical

profession to testify against each other is a well-recognized obstacle for plaintiffs in a medical malpractice action. *Cometo*, 167 Ill. App. 3d at 1029.

■ The present case is distinguishable from *Cometo*. Defendants failed to show the court a change of circumstances which necessitated vacating the prior orders barring both parties from submitting expert witnesses. Defendants never disclosed Dr. Hejna as an expert witness pursuant to Rule 220 and never sought any modification of Judge Passarella's or Judge White's pretrial orders. Thus, the trial court did not err in denying defendants' request to use Dr. Hejna as an expert witness at trial.

In addition, defendants cite no authority in support of their contention that they were prejudiced by the various references at trial to Dr. Hejna's report. Defendants have not shown how they were prejudiced by the plaintiff's testimony that she was examined by a doctor whose name she could not remember, or by plaintiff's counsel's reference in opening and closing arguments to the fact that plaintiff had an examination. Further, Dr. Smith's testimony was not improper because a treating physician may give opinion testimony on the basis of reliable facts not in evidence without disclosing those facts, which may include reports and opinions from other medical providers, so long as they are of a type reasonably relied on by experts in the field. *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.

Next, defendants argue that an *in limine* order was violated by the following exchange between the plaintiff and plaintiff's counsel on direct examination:

"Counsel: Now, when the police came, did the defendant say anything to the policeman in your presence?

Plaintiff: The policeman asked for our license and then he was complaining about being in court that morning—."

Defense counsel objected and stated:

"This is something that we talked about yesterday and right before coming out here. What is the sense of a motion in limine when the conditions don't comply?"

In response to this, the judge reserved his ruling.

■ Plaintiff indicates that the defendants failed to set forth any *in limine* order, and the record bears this out. Defendants fail to point to any page in the record wherein such motion was proposed, let alone granted. In light of the record, defendants have waived this for review on appeal. See *Baird v. Adeli* (1991), 214 Ill. App. 3d 47, 65-66, 573 N.E.2d 279 (plaintiff's contention that order *in limine* was violated waived on review because there was no order *in limine*).

Finally, defendants contend that plaintiff's proposed jury instructions numbers 20, 22 and 23 regarding damages for future pain and suffering were erroneously allowed over defendants' objections. Defendants argue that the instructions were improper because plaintiff failed to introduce any competent evidence concerning future pain and suffering at trial.

■ The trial court has the discretion to determine which instructions will be given and, absent a clear abuse of discretion, its decision will not be disturbed on review. (*Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087, 560 N.E.2d 969, 972.) In the present case, the record shows that sufficient evidence was presented to indicate that the plaintiff would continue to suffer from pain in the future. Dr. Ajmere testified that he did not know how long plaintiff's pain would last, but that it may last for the rest of her life. Based on the evidence presented at trial, the trial court properly instructed the jury on the issue of future damages.

For all of the above reasons, the judgment of the trial court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.