WILLIAM M. HANSON, Plaintiff-Appellee, v. CONSOLIDATED RAIL CORPORATION, Defendant-Appellant.

First District (4th Division)   No. 1—94—3048

Opinion filed June 27, 1996.

374

Lord, Bissell & Brook, of Chicago (David R. Schmidt, Hugh C. Griffin, Leslie J. Rosen, and Stephanie A. Burris, of counsel), for appellant.

Kevin T. Hoerner, of Kassly, Bone, Becker, Dix, Reagan & Young, P.C., of Belleville, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

William Hanson filed a complaint under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 et seq. (1988)), alleging that Consolidated Rail Corporation (Conrail) negligently caused injuries to his hand and arm. The jury returned a verdict for Hanson in the amount of $507,500. Conrail appeals the denial of its post-trial motion for judgment notwithstanding the verdict or, in the alternative, a new trial. We affirm.

Hanson was injured while he was working for Pennsylvania Truck Lines as a terminal manager at a railroad yard in Chicago. Pennsylvania Truck Lines was a subsidiary of Conrail. Its employees loaded highway trailers onto flat railroad freight cars for Conrail. The trailers were then shipped to eastern destinations.

A machine called a "Le tourneau" was used to lift a trailer onto a flatcar. The operator of the Le tourneau first lifted a container and set it over the trailer. A "groundman" secured four corner locks on the trailer to the bottom of the container. The operator then lifted the container and trailer and set them onto the flatcar. The groundman then locked the trailer into place on the flatcar and unlocked the container from the trailer. The operator then removed the container from the trailer to complete the process.

Hanson supervised the loading of trailers on January 27, 1988. He was driving a truck around the railroad yard at 5 p.m. He saw an operator having trouble disengaging a container from a trailer that had been loaded and locked onto a flatcar. The Le tourneau was able to lift the container six inches from the trailer when it became apparent that one of the four corner locks was bound.

Frank Nimeth was operating the Le tourneau, and Rudolph Berry was working as the groundman.

Hanson testified at trial that he stopped driving and got out of the truck. He signalled with his hands to Berry and Nimeth "to stop the operation" and "stay in place." Hanson then walked to the far side of the flatcar. He inspected the east corner lock on the trailer and saw it was open. He signaled to Nimeth that he was going to move to the west. Hanson then climbed onto an adjoining flatcar. He put his left foot in the middle of the adjoining flatcar and his right foot on the coupler connecting the two flatcars. He balanced himself by holding the end of the trailer with his left hand. He stepped to the west, taking his right foot off the coupler, and saw that the container-trailer lock was open but that the container had not cleared the lock. He then stepped back with his right foot to place it on the coupler and lost his balance. To avoid falling from the flatcar, he grabbed the end of the trailer just as the container resettled on it. His hand and arm were pinched between the container and the trailer.

Nimeth testified that he saw Hanson get out of the truck and climb on the flatcar. He did not see Hanson make hand signals. If he had, he would have stopped working. He did not know that Hanson was attempting to separate the container from the trailer. Nimeth explained that, at the time of the accident, he was re-setting the container onto the trailer. He intended to then separate the Le tourneau from the container, back up, and realign the Le tourneau with the flatcar.

Hanson argued to the jury that Conrail negligently caused injury to his hand and arm because Conrail failed to properly light the work area and air the track to brake the train of flatcars. Conrail denied any negligence and argued that Hanson was contributorily negligent. The jury returned a verdict for Hanson in the amount of $725,000, reduced by 30% for Hanson's contributory negligence.

Conrail argues on appeal that the trial court erred when it denied its motion for judgment notwithstanding the verdict because Hanson failed to show that the allegations of negligence caused his injury. Conrail argues that a railroad is not subject to absolute liability under the FELA, but that liability must arise from its negligence based on substantial evidence in the record. *Gonet v. Chicago & North Western Transportation Co.*, 195 Ill. App. 3d 766, 774-75, 552 N.E.2d 1224 (1990).

■ A railroad may be liable under the Federal Employers' Liability Act for conduct substantially less than common law negligence. A plaintiff need only prove slight negligence of the defendant to prevail on the claim. 45 U.S.C. § 51 (1988); *Pry v. Alton & Southern Ry. Co.*, 233 Ill. App. 3d 197, 218, 598 N.E.2d 484 (1992).

On the issue of lighting, Nimeth testified at trial that he did not

see Hanson make hand signals. He stated: "[I]t was a constant gripe of ours that the lighting *** was marginal at best. At any given moment, I don't think it would be an exaggeration to say that half of the lights were inoperative in the yard." He complained to the railroad about the lighting many times. Occasionally the lights were repaired.

Carlos Dove, who was working in the area at the time of the accident, testified that he saw Hanson signal to Nimeth with his hands before Hanson moved behind the flatcar. He also said it was "pretty dark" and that the employees constantly complained about the lighting at the yard.

Rudolph Berry, the groundman, testified that the lighting was bad at the yard. He stated: "[T]hey had lights out that needed to be replaced."

Cecil Thompson, another employee, testified that it was dark when the accident happened and the lighting conditions were "very poor." He had complained many times to Conrail about the bad lighting at the yard, but the conditions did not improve.

Nimeth also testified that it was Conrail's responsibility to air the track to brake the train of flatcars. He explained that when a track does not have air brakes, the flatcar becomes a "moving target." He stated that the lack of air on the track could cause the container to become bound to the trailer if a flatcar moved.

Thompson testified that the flatcars were rolling back and forth on the track one to two feet because there was no air on the track. He explained that Conrail aired the tracks to keep the train from moving. The air was turned off at the time of the accident.

Dove testified that the track had no air brakes and the flatcars were "moving possibly three to four feet."

We find substantial evidence in the record that Conrail was negligent in failing to provide proper lighting and to brake the train.

Conrail next argues that the jury "reached a verdict that is without support" and is "based on speculation and conjecture." Conrail argues that the issue of lighting is irrelevant because the operator could not see Hanson after he walked behind the flatcar. Conrail also contends that Hanson did not show that Conrail's failure to brake the train was the proximate cause of the injury because no witness testified that movement of the flatcars caused Hanson to lose his balance. We disagree.

■ Our review of a jury trial under the FELA is limited to the issue of whether the conclusion may be drawn that negligence of the employer played *a part* in the plaintiff's injury. *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 508, 1 L. Ed. 2d 493, 500, 77 S. Ct. 443,

449 (1957). The jury, in FELA cases, is vested with broad discretion to engage in commonsense inferences about issues of causation and fault. See *Rogers*, 352 U.S. at 510, 1 L. Ed. 2d at 501-02, 77 S. Ct. at 450-51 ("Congress vested the power of decision in [FELA] actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury"). The common law proximate cause standard is greatly reduced. *Schrier v. Indiana Harbor Belt R.R. Co.*, 102 Ill. App. 3d 855, 430 N.E.2d 204 (1981).

■ Proximate cause can be established by either direct evidence or by circumstantial evidence. Circumstantial evidence is sufficient when an inference may reasonably be drawn from it. See *Mort v. Walter*, 98 Ill. 2d 391, 457 N.E.2d 18 (1983). "If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists." W. Keaton, Prosser & Keeton on Torts § 41, at 270 (5th ed. 1984).

■ We find the jury could reasonably infer that inadequate lighting and movement of the flatcars caused, in part, Hanson's injury. Although Nimeth could not see Hanson after he walked behind the loaded flatcar, Hanson testified that he signalled to Nimeth *before* he walked behind the flatcar. Nimeth testified that if he had seen Hanson's signal, he would have stopped working. He would not have attempted to separate the Le tourneau from the bound container and trailer while Hanson was checking the locks. A reasonable jury could infer that Nimeth did not see Hanson's hand signals because the lighting was inadequate.

Although Hanson did not testify that he lost his balance because the train moved, there was circumstantial evidence to support the plaintiff's theory as to the cause of the injury and the negligence of the employer. Thompson testified that he did not see the accident, but he saw "the cars moving" when the accident happened. He stated that the flatcars were moving back and forth on the track one to two feet. Dove stated that he saw the flatcars move three to four feet. Hanson was straddled between two adjoining flatcars in an attempt to release a bound lock. He lost his balance when he stepped back with his right foot. A jury could reasonably infer that movement of the flatcars caused Hanson to lose his balance and place his hand on the chassis for balance. The proximate causal relationship between the negligence of Conrail and Hanson's fall and resulting injuries is supported by circumstantial evidence and the reasonable inference that might be drawn therefrom.

We cannot say that the evidence, when viewed in a light most favorable to Hanson, so overwhelmingly favors Conrail that "no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).

■ With regard to Conrail's motion for a new trial, the trial court's decision to deny or grant a new trial is an exercise of discretion, which will not be reversed unless a clear abuse is shown. *Harrison v. Chicago Transit Authority*, 48 Ill. App. 3d 564, 363 N.E.2d 81 (1977). To determine whether the court abused its discretion, a reviewing court considers whether the evidence supports the jury's verdict and whether the losing party was denied a fair trial. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 416 N.E.2d 260 (1981). Conrail fails to show that the trial court abused its discretion when it denied its motion for a new trial.

Affirmed.

THEIS and O'BRIEN, JJ., concur.