(text box: 1) NO. 5-03-0466

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

BRADLEY A. HAHN,    )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant,    )  St. Clair County. 

    )

v.   
    )  No. 01-L-660

)

UNION PACIFIC RAILROAD COMPANY, )
  Honorable

)  Michael J. O'Malley,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

The plaintiff, Bradley A. Hahn, filed a complaint against the defendant, Union Pacific Railroad Company (Union Pacific), pursuant to the Federal Employers' Liability Act (45 U.S.C. §51 
et seq.
 (2000)), for injuries he allegedly sustained to his back while employed by Union Pacific.  The trial court granted Union Pacific's pretrial motion for a summary judgment, and Hahn appeals.  For the reasons that follow, we reverse and remand for further proceedings. 

I. BACKGROUND

In 1994, Hahn sustained a serious, work-related injury to his back from a 15-foot fall onto frozen ground.  Dr. Michael Chabot performed spinal surgery at L4-L5 in April 1994.  Hahn settled this claim with Union Pacific.  Approximately one year after the surgery, he executed an agreement releasing Union Pacific from all liability related to the 1994 injury.  A copy of the release agreement was not made a part of the record.  

Hahn filed the instant action against Union Pacific in October 2001.  His complaint contains three counts.  Count I alleges that on October 29, 1998, and thereafter, he injured his back as a result of continuous and repetitive jostling and shaking while operating a backhoe lacking adequate cushioning.  Count II alleges that in December 1998 and January 1999, he injured his back as a result of continuous and repetitive jostling and shaking while operating a snowblower without adequate cushioning.  Count III alleges that on February 16, 1999, he injured his back as a result of opening railcar doors that were stuck and in disrepair, in order to unload gravel.  All three counts allege that Union Pacific failed to provide Hahn with (1) a reasonably safe place in which to work, (2) reasonably necessary and safe equipment, (3) adequate help and assistance, and (4) sufficient and appropriate instruction.  Count III also alleges that Union Pacific failed to maintain the doors of the rock cars.  The following evidence was adduced by the parties during discovery. 

Hahn's Testimony

The record contains excerpts of Hahn's video and discovery deposition taken on March 26, 2002, as exhibits to the parties' summary judgment filings.  Hahn testified that he had been employed by Union Pacific since 1988.  He worked as a crane operator from 1995 to 1998, and during that period of time he had not experienced any pain in his lower back or leg.  In October 1998, he was assigned to do work on a backhoe for about two weeks, which involved a lot of jarring and heavy bouncing.  The back pain first manifested itself as stiffness and soreness in his lower back shortly after he finished working on the backhoe.  He did not complete an accident report initially because he hoped it was a muscle strain and that it would go away with time.  He testified that the pain worsened to the point that he began to worry about it in November 1998.  

Hahn informed his supervisor in the middle of November 1998 that his back became sore after the backhoe project and that it was worsening.  He also told his supervisor that there was not one specific incident that caused his back to go out.  

Hahn testified that the pain became worse with each job he performed for Union Pacific.  The work he performed on a snowblower required him to do some crawling and to ride through rough yard tracks.  He testified that the work he performed on a snowblower for Union Pacific contributed to the pain.  

Toward the end of January 1999, Hahn was assigned to a position in Scott City, Missouri, unloading ballast cars.  Half of the trains had an old-style manual door and half had solar doors.  Most of the solar doors did not work, and he had to remove the locking mechanisms and perform the work by hand–work he would not have had to do had the doors been working properly.  At this point in time, he was in pain all day long, and it was hard for him to go to work in the morning.  He testified that he did not believe that he sustained another injury while working in Scott City but that the job worsened his condition. 

He completed an accident report with Union Pacific on February 25, 1999.  Hahn testified that by this time his back was so sore and his left leg so numb that he could hardly get out of bed in the morning.  When he completed the accident report, he knew he had injured his lower back but he could not assign a specific cause or specific date to his injury.  Therefore, he answered "unknown" to some of the questions on the report and left some unanswered.  Hahn testified that he wrote on the report, " 'I do not know of any one thing I did to cause this condition.' " 

Hahn testified that he did not experience any pain when he rode his motorcycle or while hunting or working at home in 1998.  He felt that the pain was related to his employment because it began with his new assignment in October 1998 as a backhoe operator.  He thought the symptoms were the result of operating a variety of pieces of heavy equipment and manual labor over a period of time, rather than any specific incident.  

Dr. Mark Williams' Testimony

The record contains excerpts of Dr. Williams' discovery deposition taken on July 18, 2002, as exhibits to the parties' summary judgment filings.  Hahn sought chiropractic treatment from Dr. Williams on December 21, 1998.  Hahn's wife had been Dr. Williams' patient, and she referred Hahn to him.  As a part of Dr. Williams' patient records, Hahn completed a brief informational section in Dr. Williams' office, and Dr. Williams' secretary completed a brief history as a part of the same form.  Hahn stated on the form that he had back and leg pain related to his employment.  He stated that the condition began in February of 1994 and that it was not gradual.  The history completed by Dr. Williams' secretary states that the date of onset was February of 1994 from a fall from 15 feet onto frozen ground and that previous treatment included disc surgery at L4 in 1995.  It further stated that some of Hahn's symptoms returned approximately one year later.  (We note that the weight of the evidence in the record indicates that Hahn's first back surgery occurred in 1994, not 1995.)

In the course of treating Hahn, Dr. Williams did not review any of Hahn's medical records regarding his 1994 injury and surgery.  Dr. Williams testified that it is not uncommon for patients to reinjure their backs, depending on the type of work they do, and that a back surgery does not guarantee that the problem has been resolved.   

After Hahn had received a number of treatments by Dr. Williams, Dr. Williams received a phone call from Hahn's wife around February 16, 1999, indicating that Hahn was having acute problems with his back after unloading ballast cars.  Dr. Williams called in a prescription for Hahn to have an MRI taken of his lower back.  

Dr. David Kennedy's Testimony

A copy of the complete transcript of Dr. Kennedy's evidence deposition taken on November 19, 2002, is included in the record.  On direct examination by Hahn's counsel, Dr. Kennedy, a board-certified neurosurgeon, testified that Hahn was referred to him by Dr. Williams.  He saw him for the first time on March 2, 1999.  Hahn's history included several months of back and radiating left leg pain that began a few months before his visit, in association with using heavy equipment at work.  Dr. Kennedy testified that he did not need to obtain any further detailed history from Hahn to effectively treat him. 

In addition to examining Hahn and taking a history, Dr. Kennedy reviewed the results of a myelogram performed on March 1, 1999.  He diagnosed a disc rupture at L4-L5 primarily on the left side, causing severe sciatica.  Dr. Kennedy recommended a disc removal and fusion surgery to Hahn.  He recommended fusion because his experience was that there is a higher incidence of complications when only a disc removal is performed on a recurrent herniation.  Dr. Kennedy performed this surgery on Hahn on April 19, 1999, at which time he observed one of the most severe disc herniations he had seen, in terms of its size and compression on the nerve root.  

Dr. Kennedy testified, subject to an objection, that he believed that there was a causal connection between the events Hahn described in his history and the initiation of his symptoms.  Thereafter, Dr. Kennedy was asked to assume that (1) Hahn was subjected to jostling and jarring while working on a backhoe without adequate cushioning on October 29, 1998, (2) Hahn was subjected to the same type of repetitive trauma on a snowblower without adequate cushioning between December 1998 and January 1999, and (3) Hahn had to pry open doors on rock cars with a heavy metal bar and use a sledgehammer because of their inefficient operation on February 16, 1999.  He was asked if he had an opinion about whether a causal relationship existed between these events and Hahn's back condition, assuming these events in fact occurred.  Dr. Kennedy testified that the events "are or could be considered causal in terms of developing his disc herniation" and that the 1994 discectomy was remote enough so that it did not have any effect in the development of the recurrent herniation.  Hahn's counsel did not ask Dr. Kennedy whether he arrived at this opinion based upon a reasonable degree of medical certainty.  

On cross-examination by Union Pacific's counsel, Dr. Kennedy testified that neither the myelogram nor the CT scan nor what he had observed during Hahn's surgery indicates when the herniation occurred or what caused it.  He could not form an opinion about whether the injury was caused by a single traumatic event, based on what he had observed during the surgery; however, he testified that there is a fairly high incidence of recurrent disc herniations at the L4-L5 level.  He testified that he was unable to provide an opinion about the 
specific
 cause of Hahn's herniation based upon a reasonable degree of medical certainty.   Dr. Kennedy understood, based on the history Hahn provided, that he did not have any symptoms following his recovery from his first surgery, until October of 1998.  He read his record of Hahn's history in full.  Hahn had informed Dr. Kennedy that he experienced frequent vibration as a heavy equipment operator for Union Pacific and performed a lot of bending and twisting.  He testified, based upon a reasonable degree of medical certainty, that the results of the myelogram and the CT scan did not clearly establish the presence of degenerative disc disease in Hahn.  It was his opinion, based upon a reasonable degree of medical certainty, that a spectrum of likelihood existed with regard to the types of activities that could cause a disc herniation to recur.  In his experience, more strenuous activities are more likely to cause disc problems than are everyday activities.  Dr. Kennedy testified that operating heavy equipment could constitute a traumatic event resulting in an injury to a disc.

Dr. Frank Petkovich's Testimony

A copy of the complete transcript of Dr. Petkovich's discovery deposition taken on November 4, 2002, is included in the record.  On direct examination by Union Pacific's counsel, Dr. Petkovich, an orthopedic surgeon, testified that Union Pacific referred Hahn to him and that he examined him one time only on March 12, 1999.  He reviewed Hahn's films and prior medical records.  Dr. Petkovich testified that Hahn completed a patient record in his office.  It indicated that the date of the onset of pain in his lower back and left leg was February of 1996.  (We note that the date Hahn wrote on this form, which is attached as an exhibit to the transcript, appears to us to read "2/ /94" and not "2/ /96".) 

Dr. Petkovich testified that Hahn gave a history of injuring himself at work in February of 1994.  Dr. Petkovich testified that Hahn told him that he began developing pain several months before seeing him.  He understood "several months" to be three or four.  Dr. Petkovich had no information about a specific injury occurring in 1998 related to work Hahn performed on a backhoe, on a snowblower, or with ballast cars.  He testified that Hahn did not inform him of a specific causal incident and that he did not inquire about Hahn's activities at Union Pacific.    

Dr. Petkovich was asked to opine about Hahn's condition and cause.  Dr. Petkovich testified that Hahn presented with recurrent lumbar disc herniation and required a revision lumbar laminectomy and discectomy and fusion at L4-L5.  He recommended a posterior approach to the surgery.  He was asked to assume that Hahn had told Dr. Williams that he started having lower back pain in 1995, one year after his initial surgery, and that this pain worsened until he saw Dr. Williams in December 1998.  Given this assumption, Dr. Petkovich testified that it was his opinion that the recurrent lumbar disc herniation was idiopathic because there was no specific history of reinjury.  He testified that it was "probably just a sequela of his original herniation and prior surgical procedure."  He further testified that 5 to 8% of recurrent lumbar disc herniations occur for unknown reasons and that everyday activities can cause recurrent disc herniations at L4-L5. 

On cross-examination by Hahn's counsel, Dr. Petkovich testified that two of Hahn's physicians had a difference of opinion about what kind of surgery to perform on Hahn, so the framework for his examination of Hahn was not to arrive at a cause of his injury but to develop an opinion about what type of surgery he should have.  He testified that a recurrent herniation can be caused by repetitive trauma even at a fairly low force.      

Neither attorney asked Dr. Petkovich whether his opinion that Hahn's injury was idiopathic was being given within a reasonable degree of medical certainty.  

Union Pacific's Motion for Summary Judgment

On January 31, 2003, Union Pacific filed a motion for a summary judgment, arguing that (1) there is no evidence that establishes that Hahn's injury was a result of the incidents alleged in his complaint, (2) there is no evidence that establishes that any negligence on the part of Union Pacific caused Hahn's injury, and (3) Hahn cannot prove that the alleged incidents caused his injury to a reasonable degree of medical certainty.  The primary focus of the motion was whether material fact questions existed regarding causation.  Union Pacific argued that it was entitled to a summary judgment as a matter of law because there is no material question of fact regarding what caused Hahn's alleged injury.  We disagree.  

A summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2002); 
Arangold Corp. v. Zehnder
, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789  (2003).  In considering a motion for a summary judgment, a court must view the record in the light most favorable to the nonmoving party.  
Land v. Board of Education of the City of Chicago
, 202 Ill. 2d 414, 433, 781 N.E.2d 249, 260-61 (2002).  "Although summary judgment aids in the expeditious disposition of a lawsuit, it is a drastic measure and should be granted only if the moving party's right to judgment is clear and free from doubt."  
Land
, 202 Ill. 2d at 432, 781 N.E.2d at 260.  "The purpose of summary judgment is not to try a question of fact[] but to determine if one exists."  
Golden Rule Insurance Co. v. Schwartz
, 203 Ill. 2d 456, 462, 786 N.E.2d 1010, 1014 (2003).  A motion for a summary judgment should be denied if the facts in the record present more than one conclusion or inference, including one unfavorable to the movant.  
Hutchcraft v. Independent Mechanical Industries, Inc.
, 312 Ill. App. 3d 351, 357, 726 N.E.2d 1171, 1176 (2000).  We review 
de novo
 a trial court's grant of a summary judgment.  
Arangold Corp.
, 204 Ill. 2d at 146, 787 N.E.2d at 789.

Having reviewed the record in its entirety and having viewed the evidence in the light most favorable to Hahn, we find that the facts present more than one inference, including one unfavorable to Union Pacific.  The trial court erred in entering a summary judgment in favor of Union Pacific, because sufficient fact issues remain for the trier of fact.  Therefore, we reverse the trial court's judgment and remand the case for further proceedings. 

II. ANALYSIS

On appeal, Hahn argues that the trial court erred in granting Union Pacific's motion for a summary judgment, because when the evidence is viewed in the light most favorable to him, material factual issues regarding causation exist for the jury.  Hahn further contends that he is not required to put on medical expert opinion testimony regarding the cause of his injuries and that any medical expert opinion testimony offered need not be based upon a reasonable degree of medical certainty.  Union Pacific contends that the medical evidence proves that Hahn's injury was caused by and is a progression of his original injury in 1994 and not the events alleged in his complaint and that Hahn's medical experts are required to base their opinions on a reasonable degree of medical certainty.  We find that Union Pacific's assessment of the evidence in this case completely ignores probative evidence sufficient to lead the trier of fact to an opposing inference or conclusion adverse to Union Pacific.  Therefore, we reverse.    

Hahn brought this action pursuant to the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 
et seq.
 (2000)).  The purpose of FELA is to provide a remedy to railroad employees for injuries sustained from railroad accidents.  45 U.S.C. §51 (2000).  Under FELA, the plaintiff has the burden to prove negligence by the employer.  
Mikus v. Norfolk & Western Ry. Co.
, 312 Ill. App. 3d 11, 21, 726 N.E.2d 95, 104 (2000).  However, the plaintiff's burden in a FELA action is much less stringent than it would be in an ordinary negligence action.  To avoid a summary judgment, Hahn was required to elicit evidence that Union Pacific's negligence played just the slightest part in producing his injury.  See 
Myers v. Illinois Central R.R. Co.
, 323 Ill. App. 3d 780, 784, 753 N.E.2d 560, 563 (2001); 
Hanson v. Consolidated R. Corp.
, 282 Ill. App. 3d 373, 377, 668 N.E.2d 98, 101 (1996).  In meeting this burden, Hahn is not required to put on evidence regarding the occurrence of a specific accident.  Rather, under FELA, a condition that developed over the course of several years can be an "injury".  
Massimiani v. Monongahela Ry. Co.
, 339 F. Supp. 832, 833 (W.D. Pa. 1972).  Having reviewed the record in its entirety, we find that the evidence supports two general, opposing conclusions regarding causation–either Hahn's recurrent herniation was a progression from his 1994 disc injury or it was caused by trauma incurred in 1998 and 1999 at work as alleged in Hahn's complaint. 

Before we discuss the substance of the evidence, we address the sufficiency of the form and the manner in which it was presented.  Hahn may prove proximate cause by either direct evidence or circumstantial evidence.  Circumstantial evidence is adequate when the fact finder may reasonably draw an inference from it.  
Hanson
, 282 Ill. App. 3d at 377, 668 N.E.2d at 101.  Here, Union Pacific rebukes the medical testimony because no medical expert could give an opinion regarding a 
specific
 cause of Hahn's injury and because none of Hahn's experts could connect his injury to Union Pacific or to the incidents alleged in his complaint based upon a reasonable degree of medical certainty.  Union Pacific urges a standard for medical opinion testimony not recognized by the law.    

To be probative on the issue of causation, a medical expert is not required to give an opinion regarding a 
specific
 cause.  Rather, a medical expert is permitted to testify to what might or could have caused an injury, despite any objection that the testimony is inconclusive.  Testimony from a physician regarding what might or could have caused an injury is merely a medical opinion given on facts assumed to be true.  
Geers v. Brichta
, 248 Ill. App. 3d 398, 407, 618 N.E.2d 531, 538 (1993); 
Mesick v. Johnson
, 141 Ill. App. 3d 195, 205-06, 490 N.E.2d 20, 28 (1986).  For evidence to be relevant, it need only tend to make the existence of any fact more probable or less probable than it would otherwise be.  
Hawn v. Fritcher
, 301 Ill. App. 3d 248, 254, 703 N.E.2d 109, 113 (1998). 

The medical opinion testimony in this case meets the "might or could" standard set forth in 
Mesick
 and 
Geers
.  Dr. Kennedy testified, subject to an objection, that he believed that there was a causal connection between the events Hahn described in his history and the initiation of his symptoms.  He opined that the events described by counsel (given certain assumptions) "are or could be considered causal in terms of developing his disc herniation" and that the 1994 discectomy was remote enough that it did not have any effect in the development of the recurrent herniation.  Dr. Kennedy testified that operating heavy equipment could constitute a traumatic event resulting in an injury to a disc, and he further testified that more strenuous activities are more likely to result in a disc herniation than are everyday activities.  This testimony meets the "might or could" standard for medical opinion testimony and is more than sufficient to survive a motion for a summary judgment in a FELA action.  

We also reject Union Pacific's contention that Hahn's counsel's failure to preface some of his questions to Dr. Kennedy with the familiar forensic phrase "based upon a reasonable degree of medical certainty" renders his opinions on causation inadmissible.  There is no magic to the phrase itself.  The phrase provides legal perspective to medical testimony and signals to the jury that a medical opinion is not based on mere guess or speculation.  It is of no consequence that a medical expert witness fails to use this phrase if the expert's testimony reveals that his opinions are based upon specialized knowledge and experience and recognized medical thought.  See 
Plooy v. Paryani
, 275 Ill. App. 3d 1074, 1082, 657 N.E.2d 12, 19 (1995); 
Dominguez v. St. John's Hospital
, 260 Ill. App. 3d 591, 595, 632 N.E.2d 16, 19 (1993).  Further, an examination of a plaintiff and a review of his medical history provide a sufficient foundation from which a treating physician may offer opinions on the cause of his injury.  
Mikus
, 312 Ill. App. 3d at 27, 726 N.E.2d at 108.  We believe that Dr. Kennedy's testimony sufficiently demonstrates that his opinions were based upon his specialized knowledge and experience and not mere guess or speculation and that his testimony serves to narrow the reasonable probabilities of causation in an area where limited medical knowledge does not permit an unequivocal opinion.  See 
Scholle v. Continental National American Group
, 44 Ill. App. 3d 716, 722, 358 N.E.2d 893, 898 (1976).  Having found Dr. Kennedy's opinion testimony foundationally sufficient, the trial court should have considered it in the light most favorable to Hahn in ruling on Union Pacific's motion for a summary judgment.  

To defend against Union Pacific's foundational challenge to the medical testimony, Hahn argues that he is not required to prove causation with medical expert opinion testimony.  However, we need not decide this matter because we found that the medical evidence in this case satisfies the "might or could" standard for opinion testimony and was foundationally sufficient to go to the jury. 

Additionally, we summarily reject Union Pacific's contention that Hahn based his claim on specific individual incidents.  Union Pacific concedes that proof of a specific accident is not a prerequisite to state a claim under FELA, but it claims that Hahn pleaded specific incidents in his complaint and is therefore limited to proving the occurrence of the same.  We disagree.  Our reading of the complaint reflects that Hahn alleged an injury as a result of repetitive trauma incurred over the course of several months while employed in a variety of positions with Union Pacific. 

We now turn to the substance of the evidence in this case.  Having reviewed the record 
de novo
, we find substantial evidence to support Hahn's allegations that his injury was caused by the incidents alleged in his complaint.  Specifically, Hahn testified that he did not experience any lower back pain following his recovery from surgery in 1994 until October 1998, when his position changed from crane operator to backhoe operator.  Dr. Kennedy corroborated this testimony.  Hahn testified that work on the backhoe, and subsequently the snowblower, involved jarring and bouncing and contributed to his pain.  He testified that more than half the solar doors on the trains he unloaded in Scott City were malfunctioning and that his work on this project worsened his condition.  "Proof of a change in health following an injury is competent as tending to establish that the impaired condition was due to the trauma."  
Plooy
, 275 Ill. App. 3d at 1083, 657 N.E.2d at 19.  Thus, a jury could reasonably infer that his injury was associated with his job duties in 1998 and 1999.  A jury could also infer from Hahn's testimony that he would not have released Union Pacific from liability for the 1994 disc injury if he had continued to experience pain associated with it.  The documentary evidence in the case, including patient records, could lead a jury to infer that Hahn did not know the specific cause of his back injury and that he intended to provide his physicians with a complete chronological history of his condition.  

The physicians' testimony, when viewed in conjunction with Hahn's, strengthens the inferences that can be formed from the evidence.  A jury in a FELA action is vested with broad discretion to engage in common sense inferences about issues related to causation and fault.  
Hanson
, 282 Ill. App. 3d at 377, 668 N.E.2d at 101.  Dr. Petkovich testified that a recurrent herniated disc can be caused by repetitive trauma even at a fairly low force.  Dr. Kennedy testified that repetitive and jarring work on heavy equipment lacking adequate cushioning either was or could be the cause of Hahn's injury and that disc problems are more likely to occur as a result of strenuous activity.  The medical testimony narrows the range of probabilities with regard to medical causation for the jury.  

We next consider Union Pacific's argument that a summary judgment in its favor was proper because Hahn failed to present evidence of Union Pacific's negligence.  Hahn contends that a lack of evidence of negligence on the part of Union Pacific was not presented to the trial court as a basis for the railroad's motion.  Contrary to Hahn's argument, however, Union Pacific did argue in its motion that there is no evidence that establishes that any negligence on its part caused Hahn's injury.  In granting a summary judgment in favor of Union Pacific, the trial court did not explain the basis of its decision.  Therefore, we do not know to what extent the trial court relied on this basis, if at all.  

We also note that the record gives us no indication how close this action was to a trial setting or to what extent discovery had been completed.  It appears to us, based on the record before us, that a significant amount of discovery remained to be done at the time Union Pacific filed its motion.  Regardless, we find that Hahn set forth adequate facts and evidence of negligence on the part of Union Pacific sufficient to survive a pretrial motion for a summary judgment.

The pleadings in a case are properly before the trial court on a motion for a summary judgment.  735 ILCS 5/2-1005(c) (West 2002).  Hahn alleges in his complaint that he injured his back as a result of continuous and repetitive jostling and shaking while operating a backhoe and snowblower lacking adequate cushioning over a period of time.  He further alleges that he injured his back while unloading rock cars with doors that were stuck and in disrepair.  All three counts of his complaint allege that Union Pacific failed to provide him with (1) a reasonably safe place in which to work, (2) reasonably necessary and safe equipment, (3) adequate help and assistance, and (4) sufficient and appropriate instruction.  Count III alleges that Union Pacific failed to maintain the doors of the rock cars.  On its face, the complaint sets forth numerous instances of negligence on the part of Union Pacific.   

Additionally, deposition testimony provides evidence from which a jury could reasonably conclude that Hahn's injury resulted, at least in part, from Union Pacific's negligence.  Hahn testified that he informed his supervisor of his lower back pain in November of 1998, yet he was assigned to unload rock cars thereafter and assigned to work with several newly hired workers with little or no experience.  Hahn also testified that the doors on the rock cars were not working properly and that the work he performed to open the doors worsened his condition.  Dr. Kennedy was asked to assume, in connection with his opinion on medical causation, whether inadequate cushioning on heavy equipment and use of a heavy metal bar and sledgehammer to pry open defective doors could cause disc problems.  He opined that these factors could have caused Hahn's injury.  We find that the record before us contains some evidence of negligence on the part of Union Pacific sufficient to survive a pretrial motion for a summary judgment in a FELA action.  The complaint, together with the deposition testimony in the record, demonstrates that a genuine issue of material fact exists and that a summary judgment was improper.  See 735 ILCS 5/2-1005(c) (West 2002).

We acknowledge that there are some minor inconsistencies in the testimony and documentary evidence in this case not highlighted here.  However, such inconsistencies are matters that affect only the weight of the evidence, not its admissiblity, and are properly reserved for resolution by the jury.  
Mikus
, 312 Ill. App. 3d at 27, 726 N.E.2d at 108; 
Mesick
, 141 Ill. App. 3d at 205, 490 N.E.2d at 28.  We find that the proximate causal relationship between Union Pacific's alleged negligence and Hahn's injury is supported by circumstantial evidence and the reasonable inferences that can be drawn from it.  Therefore, the trial court erred in granting Union Pacific's motion for a summary judgment.  

III. CONCLUSION

Accordingly, we reverse the trial court's judgment in favor of Union Pacific and remand this cause for further proceedings.  

Reversed; cause remanded.

KUEHN and DONOVAN, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/24/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.